NOTICE
Decision filed 01/07/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190536-U

NO. 5-19-0536

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 14-CF-34 |
| | ) | |
| OMARI TINSLEY, | ) | Honorable Ralph R. Bloodworth III |
| | ) | and Honorable W. Charles Grace, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's sentence is affirmed where the court did not consider improper factors during sentencing; where he was not denied effective assistance of counsel and where defendant's sentence was not excessive.

¶ 2   Following a guilty plea to aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2014)), defendant, Omari Tinsley, was sentenced to 25 years' imprisonment. Defendant appeals, arguing that: (1) the trial court's consideration of his possession and use of a firearm was double enhancement or, alternatively, his counsel was ineffective in failing to challenge the trial court's consideration of the weapon; (2) the trial court's consideration of his school records as aggravation was erroneous or, alternatively, his counsel was ineffective in failing to challenge the admission of the records; and (3) his sentence was excessive and the trial court failed to consider mitigating factors. For the following reasons, we disagree.

1

¶ 3                                    I. BACKGROUND

¶ 4      On January 27, 2014, defendant, Omari Tinsley, who had just turned 18, and D'Anthony

Gamble got into a fight with Romello Merriweather on the grounds of the Carbondale Rebound

high school. Prior to the fight, Romello called his father, Jerome Merriweather, and told him he

was going to be "jumped" and asked his father to pick him up. Jerome showed up during the

fight and saw defendant and Gamble beating his son. Jerome pulled defendant off his son and

threw defendant into the road. Defendant came back, tried to hit Jerome, and Jerome punched

defendant four or five times in the face. Thereafter, Jerome walked away from defendant and

turned around to tell his son it was time to leave. When Jerome turned around, he saw defendant

pull a gun out of his waistband. Jerome started running to his car and defendant took chase.

Jerome fell by his car which allowed defendant to catch up, at which time defendant stood

directly over Jerome, shot him point blank right below his rib cage, and then fled the scene.

¶ 5      On January 28, 2014, the State charged defendant by information of: (1) attempt (first

degree murder), a Class X felony, in violation of sections 8-4(a) and 9-1(a)(2) of the Criminal

Code of 2012 (Code) (720 ILCS 5/8-4(a), 9-1(a)(2) (West 2014)); (2) aggravated battery with a

firearm, a Class X felony, in violation of section 12-3.05(e)(1) of the Code (*id.* § 12-3.05(e)(1));

and (3) aggravated discharge of a firearm, a Class X felony, in violation of section 24-1.2(a)(2)

of the Code (*id.* § 24-1.2(a)(2)). An arrest warrant was issued and, after receiving a tip, the

SWAT team captured, and the police arrested, defendant on February 13, 2014. On February 20,

2014, the grand jury indicted defendant on the charges listed in the information.

¶ 6      Jerome's evidence deposition was taken on August 15, 2014, and was filed by the State

on August 22, 2014, with notice of the filing and a motion to file the deposition transcript under

seal. No objection was filed to the State's motion, and the trial court granted the motion on

2

August 29, 2014. Jerome's deposition addressed his own prior felony convictions, described the events leading up to the shooting and the shooting itself. He testified that following the incident he was able to get off the ground, get in the car, drive to the hospital five blocks away and then he blacked out. He stated that the bullet hit one of his kidneys, his liver, his colon, and his intestines. He now required an ostomy bag. He stated that he was on life support most of time he was in the hospital, died six times, had seven different surgeries, and another was scheduled in the future. He saw a doctor once a week for checkups, CT scans, and dialysis. He was in the Carbondale hospital for two months and was later transferred because there was nothing more they could do in Carbondale. Jerome identified defendant as the person that shot him and stated that he was protecting his son when he pulled defendant off Romello. He disagreed that he started the fight with defendant. He further stated that he was not hitting defendant when he was shot; he was lying on the ground.

¶ 7    On September 16, 2014, defendant pled guilty to aggravated battery with a firearm, and the remaining charges of attempted murder and aggravated discharge of a firearm were dismissed. A presentence investigation report (PSI) was filed on November 19, 2014. The PSI noted that defendant was 5 feet 8 inches tall and weighed 230 pounds. Defendant's juvenile record consisted of retail theft in 2010, for which defendant was sentenced to 18 months' probation. On July 29, 2011, defendant was charged with aggravated battery (720 ILCS 5/12-4(b)(8) (West 2010)), a Class 3 felony, and a revocation petition was filed. On August 16, 2011, defendant pled guilty to aggravated battery (*id.* § 12-4(a)). He was sentenced to an additional 17 months' probation and prohibited from having contact with the victim. An order discharging him from probation was issued on April 17, 2013.

3

¶ 8    The PSI stated defendant completed the eleventh grade. Defendant stated that he was at Carbondale Rebound high school his senior year and his grades were average to above average. Defendant further stated that during high school, he had attendance issues but did not have disciplinary problems. The PSI noted that defendant's school records revealed failing to average grades and disciplinary problems ranging from standing up on the bus to gross disrespect and gross insubordination. The school records were attached to the PSI. Defendant admitted drinking alcohol and smoking marijuana in 2013, despite successful completion of an outpatient substance abuse program for marijuana in 2012.

¶ 9    The sentencing hearing was held on February 18, 2015. Although defendant's counsel claimed a couple of minor discrepancies in the PSI, he declined the opportunity to put them on the record. The State presented no witnesses or additional evidence. The defense relied on eight letters attesting to defendant's character and called Deon Jones as a witness. Jones stated that when he got to the fight, Jerome was already there and was on top of defendant "beating him bad." He stated that Jerome was really big, probably 6 feet or 6 feet 2 inches tall, weighed between 250 and 260 pounds, and was in his 30s. He stated that when Jerome finished the beating, defendant was "real bloody." He stated that when the fight between defendant and Jerome was over, Jerome's son came over to defendant and hit him again. Jones stated that after Romello hit defendant, the gun was drawn.

¶ 10    On cross-examination, Jones confirmed he was friends with defendant. He further agreed that he picked up the bullet after the incident and threw it in the ditch. He stated that he did it "out of curiosity" and disputed that he threw it in the ditch because he did not want the police to find evidence against his friend. He also agreed that when he first spoke to the police, he told police that he saw nothing and was going to Burger King. He agreed he lied to the police. He

4

disputed that he lied to the police to help his friend and stated he lied because he did not want to be involved with the incident. He further stated that he did not know that he could get into trouble for going into a crime scene and taking the bullet. Jones agreed that he saw defendant with the gun and saw him pull it from his waistband. He agreed that nobody else had a gun, except defendant, and that no one was hitting defendant when he shot Jerome. Jones confirmed the original fight was two on one: defendant and Gamble against Romello. He never saw the gun before that day.

¶ 11   The defense stated that it was unable to find Gamble, so it had no other witnesses, and the court provided defendant an opportunity to provide a statement on his own behalf. Defendant apologized and expressed regret for the incident. He stated this was the biggest mistake of his life, and he was working to change his life, control his temper, and respect others. He also asked the court to take into consideration that "none of this would have happened if he [had not come to] *** the school [and] *** beat me up." He stated he was not trying to push the weight to Mr. Merriweather. "I just need you to know I didn't provoke everything." He then stated, "I should have never brought the gun on school grounds to begin with." Defendant advised the court of the improvements he hoped to make in himself while he was imprisoned and advised the court that he had a six-month-old daughter who was born while he was in jail, that needed a father in her life, and he had never held. He stated that he wanted to help younger kids in his community by helping them finish school and avoid mistakes like he made. He asked for "one more chance to make a big difference in society" and advised the court of his volunteer work at Addus, his community service doing community gardening, and helping his dad with mentoring and peer support groups for grown men. He then thanked the court for his opportunity to make the statement.

¶ 12    The State argued that, beyond the statement made by defendant in allocution, there were no mitigating factors. The State addressed bullying at schools and argued that defendant essentially had run of the school as evidenced by claims of gross insubordination, gross disrespect, theft, drug possession, and physical aggression at the school. It stated defendant was disrupting the school and society, and "above all, this person brought a gun to school." It asked where defendant got the gun, where he got the bullets, and where he hid the gun. The State noted defendant's juvenile record, which included a Class 3 felony, stating, "by law he is not entitled to have a gun." The State further stated, "He can't have the bullet either. He can't take a gun or a bullet onto school grounds. He can't go running through the community with a gun or a bullet." The State classified the event as "every parent's nightmare." "You go to try to pick your kid up and there they are. You try to wrestle them away and what parent wouldn't? And the kid's got a gun. He brought a gun to school." The State said that deterrence was the first issue because people who think it is okay to pull out or bring a gun to school will know that the community will not bear that burden. Nor is it okay to hide the gun so it is never found and is still not found in this case. Second, the shooting caused a profound injury which occurred on the school grounds of District 165. The State argued that defendant's conduct, based on his history, was likely to recur, and recommended a 27-year sentence.

¶ 13    The defense argued that while mitigating factors one and two did not apply, factor three did apply because defendant was "beaten up pretty severely by a man twice his age and obviously much more experienced." The defense also argued that, for the same reason, factors four and five applied, stating, "Mr. Merriweather came onto the school grounds, engaged himself in this fight and basically beat Omari very severely. The evidence is very clear about that, and I don't think that there is any way that this can be changed." The court interrupted and asked,

"[O]n that particular point induced by someone, was not the fight started either by Mr. Tinsley or one of his cohorts on Mr. Merriweather's son before Mr. Merriweather was ever there?" Counsel responded, "There are *** different version[s] of that, Judge. One side says that the other side started it. The other side says—so we have finger pointing, which I think is typical in these situations." The court then asked, "At the time Mr. Merriweather was arriving on the scene, was not his son the one that was being pummeled?" Counsel responded, "Well, we dispute. Our argument is and our position is it was a one-on-one fight at that point."

¶ 14    Defense counsel argued that factor seven applied, stating that although there was a juvenile adjudication there was no extensive criminal history involved; counsel further stated that factor eight applied in that the circumstances were unlikely to recur. Defense counsel stated factor nine applied, arguing that the character and attitudes of defendant indicated that it was unlikely he would commit another crime but admitted that "when you look at the PSI, that doesn't appear to be true," but countered that with defendant's statement "today and the fact that he has learned and progressed in the year he has been in jail." Counsel argued that factor 11 applied, to some extent, because "a long term of imprisonment would certainly be detrimental to his daughter and deprive her of any contact with her father." Defense counsel also addressed the PSI and the State's references to school incidents, stating, "none of those resulted in any criminal convictions, it is his conduct at school that is dealt with in the school and there has been no investigation. What it says is what it says. Whether or not there was actually a theft or whether or not there was actually possession of marijuana, the evidence really doesn't establish that by any credible standards as far as the Court would be concerned."

¶ 15    Defense counsel asked for a sentence 6 to 10 years at 85%. The defense also questioned why there was not a victim impact statement and why Jerome was not at the sentencing hearing.

7

"You would think that he would be here given the harm which he has suffered here and that he would be testifying to the Court as to what his current condition is. So[,] we think that's worthy of the Court's consideration also. \*\*\* I am sure that's not due to the fault of the State. It must be due to the fact Mr. Merriweather was not cooperating with that." Defendant's counsel then stated that defendant was not "a throw away" and could contribute to society. "[R]estoring of the offender to useful citizenship is one of the primary goals of the sentencing process" and "a sentence of six to ten years would accomplish that goal. \*\*\* It is not like Omari just shot somebody walking down the street. He shot someone who had just beaten him up very severely and we think that that's one of the factors that the Court might consider in determining sentence here, so we are asking the Court to impose a sentence in the neighborhood of six to ten years."

¶ 16    After thanking counsel, the court stated:

"Let me start by stating that I have gone through the eight letters that have been submitted to me today. All good people. All good letters. Four of them talking about what a good young man and how helpful he is, several of those that had been written by his relatives. And there is [*sic*] four other letters in here that certainly say that, but they say much more and they are from individuals who come from backgrounds, some of them backgrounds similar to Omari, who have been bulwarks of society, in the sense that they are veterans, police officers, college graduates. Mr. Dougherty came from Cabrini-Green, which I am very familiar with, and he is now working for JPMorgan Chase in Chicago. Omari's own father is remarkable in what he has done, been a resident of the community. But not one, not one of these eight letters mentions the fact that Omari had a gun, that Omari had a gun that he should not have had, that he took that gun, he took

8

that gun to school grounds for what purpose? It certainly wasn't to write his essay. It certainly wasn't for show and tell. He took it for one purpose and he accomplished that purpose. The only thing Omari said about the gun, he shouldn't have brought the gun to school. What about owning the gun? What about being in the possession of a gun? What can a gun do? It can kill people. You are carrying it around in this community and you damn near accomplished a goal of having a gun, which is killing someone. At one point, if I am correct in this case, we are talking about having to do a deposition of the victim because he was so severely injured, yet I hear today why isn't he here? I don't know why he is not here, but we are not talking about someone who is lightly injured by your use of a gun, young man. You damn near killed him and I don't know that he won't die. And you know what? Not one of these letters and not you mentioned the victim in this case other than the fact that he beat on you. He now is faced with whatever medical condition he has for the rest of his life because you took a gun you shouldn't have had and used it. You haven't learned a doggone thing about this. It is you and it is the gun and you barely even mention the gun in here. Oh, woe is me. I have learned a lot.

Take a look at your history. You have been basically anti-social. You have shown a total lack of respect of the community, for the individual[s] in that community and for the morays [*sic*], although I doubt that you know what that is, of society. We're a society that lives together because we abide by certain things that are common among all of us. We have a right to live. We have a right to be free. We have a right to enjoy life. You just impinged upon all kinds of people's

9

rights based upon your history and you are a young man, a very young man, but you haven't learned anything by what society has tried to do with you. Special schooling, special settings. Services have been given to you and on this particular day, January 27, 2014, you haven't learned a doggone thing. You are carrying around a gun. You take it to a school grounds. You are beating on this man's son and when he comes and tries to stop the beating to his son, you pull the gun out and you shoot him. Judge, jury and executioner. That's the Omari that's sitting in front of me today, not the Omari whose [*sic*] out there mowing people's lawns, helping them with their difficulties. Not one of these people mention the Omari who is carrying around a gun. Not one of these people is mentioning the Omari who ran and hid from the police rather than saying, listen, I was getting beaten up. I happen to have this gun. This guy was whipping my butt. Here's the gun. I'm sorry, I shouldn't have done it. No, not at all. Not a bit of that.

No, sir, you are the problem. You are the problem because you think you are bigger than everybody out there and if you aren't bigger than everybody out there, you brought along an equalizer. That equalizer was the gun. The gun is now going to cost you 25 years in the penitentiary because that's what I am sentencing you, 25 years in the penitentiary at 85 percent. Upon your discharge from the penitentiary, you are going to have to serve three years of mandatory supervised release.

This is a final order of the Court."

¶ 17 The court concluded by advising defendant of his appeal rights as well as the requirement to file a petition to withdraw his guilty plea. Thereafter, the State advised the trial court of

10

defendant's 370 days' credit, and the court requested the information be included on the mittimus.

¶ 18    On March 10, 2015, the State filed its statement of facts, pursuant to section 5-4-1(d) of the Unified Code of Corrections (730 ILCS 5/5-4-1(d) (West 2014)), which stated, along with information regarding the charges and sentencing, the gun was never found and witnesses against defendant had to be relocated or hidden before the plea because of threats. The statement concluded by stating defendant was "extremely dangerous."

¶ 19    The defense filed a motion for reconsideration on March 17, 2015, alleging the sentence was excessive and claimed the trial court failed to (1) properly weigh the mitigating and aggravating factors present in the instant case prior to the sentence; (2) read and consider the character reference/recommendation letters submitted to the court in order to supplement the PSI; (3) take into account the mitigating factors raised by the uncontroverted evidence that Jerome, a much older and physically larger person than defendant, severely beat defendant prior to defendant shooting Jerome; and (4) consider defendant's very young age, his expressed remorse for his actions, and his potential for rehabilitation and restoration to useful citizenship.

¶ 20    The reconsideration hearing was held on May 11, 2015. The defense stated they had very little to add to the motion as filed, were respectfully asking the court to revisit this issue, and requested a reduction in the sentence to 15 years. The State argued that the sentence was within the guidelines, was not the maximum, and asked the court to deny the motion to reconsider the sentence. The court denied defendant's motion to reconsider the sentence.

¶ 21    Defendant appealed the decision on June 3, 2015. On December 14, 2017, this court entered a summary Rule 23 order finding that the 604(d) certificate of compliance was defective because none of the certificates ever stated that counsel reviewed the report of proceedings from

11

the guilty plea hearing. Although defendant also argued that his sentence was excessive, we found it premature to address the issues since the case was going to be remanded for the 604(d) error. The trial court's denial of defendant's motion to reconsider was vacated and the case was remanded for the filing of a proper Rule 604(d) certificate, the filing of a new post plea motion, if desired, and a hearing on any new motion.

¶ 22     An amended motion to reconsider the sentence was filed on March 19, 2018, restating the same issues set forth in the previously filed motion, and a 604(d) certificate was filed that included examination of the report of proceedings from the guilty plea. Defendant's prior counsel withdrew, and a public defender was appointed. On December 10, 2018, a second amended motion to reconsider sentence was filed. This motion alleged that the sentence of 25 years was excessive and should be reduced because the trial court failed to (1) properly weigh the mitigating and aggravating factors present; (2) state on the record the particular mitigating and aggravating factors considered by the court in imposing the sentence; (3) consider defendant's youth and potential for rehabilitation and restoration to useful citizenship prior to imposing the sentence; (4) read and consider the character reference/recommendation letters submitted to supplement the PSI prior to imposing the sentence; (5) properly consider prior to imposing the sentence the statutory factors in mitigation (specifically three, four, five, and eight) which were raised by the uncontroverted evidence that Jerome, a much older and physically larger person than defendant, severely beat defendant prior to defendant shooting Jerome; and (6) properly consider defendant's statement of allocution, including his clearly-stated remorse, prior to imposing the sentence.

¶ 23     The case was reassigned to Judge Grace who heard arguments on the second amended motion to reconsider on March 14, 2019. Following arguments, the trial court took the case

under advisement. On March 22, 2019, the trial court issued a written order denying the motion to reconsider the sentence and the defendant timely appealed.

¶ 24                                    II. ANALYSIS

¶ 25     On appeal, defendant contends that (1) the trial court erroneously considered his possession and use of the firearm as aggravation even though it was inherent in the offense of aggravated battery with a firearm or, alternatively, that defendant's trial counsel was ineffective by failing to object to the trial court's reliance on the weapon at sentencing; (2) the trial court considered improper evidence of conduct not resulting in conviction and concluded that the evidence, which consisted of defendant's school records, was proper aggravation or, alternatively, that defendant's trial counsel was ineffective for failing to object to the admission of the school records without requiring the State to provide witness testimony; and (3) that the trial court issued an excessive and disproportionate 25-year sentence despite defendant's age, the serious provocation, and significant mitigating evidence supporting defendant's rehabilitative potential.

¶ 26                     Improper Sentencing Factor—The Gun

¶ 27     On appeal, defendant contends that because the trial court repeatedly addressed the fact that the defendant had a gun, the trial court impermissibly used the gun as an aggravating factor at sentencing. The defendant concedes that the amount of weight placed on that fact was unclear and therefore requests the sentence be vacated. The State contends the court made general remarks about the circumstances and seriousness of the offense where, here, the defendant, a high-school student, who should not have possessed a gun at all, took one to school and then shot and nearly killed a man who tried to stop the man who was beating up his son. The State further

argues the trial court also noted that the defendant hid from police and never surrendered the gun.

¶ 28    It is undisputed that defendant failed to object to this claim of error at the sentencing hearing or preserve this claim of error in his motion to reconsider sentence; therefore, the error is considered forfeited unless it is deemed plain error. *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). "The plain-error doctrine is a narrow and limited exception." *Id*. at 545. "To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred." *Id*. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id*.

¶ 29    A trial court is given broad discretion in fashioning a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). It must not ignore relevant mitigating factors or consider improper aggravating factors. *People v. Flores*, 404 Ill. App. 3d 155, 157 (2010). When reviewing a trial court's sentencing decision, the reviewing court should not focus on a few words or statements made by the court. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). The determination of whether a sentence was improper must be made by considering the entire record. *Id.* at 526-27. The decision of whether the trial court relied on an improper factor at sentencing presents a question of law that is reviewed *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8.

¶ 30    Defendant first claims that the trial court improperly considered a factor that is inherent in the offense itself. A single factor cannot be "used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." *People v. Guevara*, 216 Ill. 2d 533, 545 (2005). However, this rule is not strictly applied, because public policy requires a sentence to be determined in accordance with the particular circumstances of

14

the offense. *People v. Thomas*, 171 Ill. 2d 207, 226-27 (1996). "A trial court is not required to refrain from any mention of sentencing factors that constitute elements of the offense." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 15. As noted by *Sauseda*:

> "Sentencing hearings do not occur in a vacuum and the duty to impose a fair sentence entails an explanation of the court's reasoning in the context of the offenses of which a defendant has been convicted. A fair sentence is not just the product of mechanically tallying factors in aggravation and mitigation and calculating the result. Indeed, a sentencing hearing is likely the only opportunity a court has to communicate its views regarding the defendant's conduct and thus we do not agree that a trial judge's commentary on the nature and circumstances of a defendant's crimes necessarily results in improperly using elements of the offense as factors in aggravation." *Id.*

¶ 31    Here, the defendant pled guilty to aggravated battery with a firearm; the statute provides, "A person commits aggravated battery when, in committing a battery, he or she knowingly *** [d]ischarges a firearm *** and causes any injury to another person." 720 ILCS 5/12-3.05(e)(1) (West 2014). The trial court's comments do not show the court improperly sentenced the defendant based on defendant's intent to discharge a firearm. Instead, the trial court's initial comments address the fact that none of the letters submitted on the defendant's behalf mentioned the fact that the defendant had a gun, that the defendant had a prior felony and should not have had a gun, and that the defendant took the gun to school. These comments address defendant's juvenile history as well as the location of the offense. The court then noted the defendant's only statement about the gun during allocution which was that he should not have brought the gun to school. Again, this addresses the location of the incident. The court again noted the defendant's

15

failure to address owning and possessing a gun, which again, was a reference to defendant's history that precluded him from having a gun. Thereafter, the court addressed what a gun could do and noted that the defendant "damn near accomplished a goal of a gun, which is killing someone." Here, we find this statement relates to the circumstances and seriousness of the offense. Similarly, we find the trial court's statement that "You are beating on this man's son and when he comes and tries to stop the beating to his son, you pull the gun out and you shoot him," was about the particular circumstances of the offense, which is permitted. See *People v. Robinson*, 391 Ill. App. 3d 822, 842 (2009).

¶ 32    The court also noted defendant's actions after the incident, which included the defendant running and hiding from the police "rather than saying, listen, I was getting beaten up. I happen to have this gun. This guy was whipping my butt. Here's the gun. I'm sorry, I shouldn't have done it." This comment is about the defendant's character and how he handled the situation after the incident. The court concluded by stating, "No, sir, you are the problem. You are the problem because you think you are bigger than everybody out there and if you aren't bigger than everybody out there, you brought along an equalizer. That equalizer was the gun. The gun is now going to cost you 25 years in the penitentiary because that's what I am sentencing you, 25 years in the penitentiary at 85 precent." Here, we find the court's statements address the defendant's character, not his use or the discharge of the gun, which is the element of the offense.

¶ 33    Based on our review of the record, the trial court only referenced the element of the offense once and that was in context of reiterating the undisputed, and admitted, circumstances of the offense, which is permissible. See *id*. We further note that, at no time, did the trial court state that it considered defendant's discharge of the firearm as an aggravating factor in the defendant's sentencing.

16

¶ 34    Here, both in its briefing before this court, as well as its motion to cite to additional authority, defendant admits that the extent of the trial court's reliance on the allegedly improper factor is unknown and contends therefore that defendant's sentence must be vacated and remanded, citing *People v. Walker*, 392 Ill. App. 3d 277, 301 (2009), *People v. Conover*, 84 Ill. 2d 400, 402 (1981), and more recently, in his motion to cite additional authority, *People v. McKinney*, 2021 IL App (5th) 170471-U. However, we need not address those cases because we do not find that the trial court relied on an improper aggravating factor at sentencing. Reviewing the record as a whole and considering the court's comments in the context they were provided, we find that the defendant failed to satisfy his burden to affirmatively establish that his sentence was based on improper considerations. As such, we do not find clear or obvious error.

¶ 35    Defendant also contends, in the alternative, that his constitutional rights were violated because he is guaranteed effective assistance of counsel at his sentencing hearing. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. A defendant is deprived of that right when (1) counsel's deficient performance falls below an objective standard of reasonableness and (2) the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In support, defendant claims his counsel's performance fell below the objective standard of reasonableness when he failed to challenge the trial court's reliance on a factor inherent in the offense, *i.e.*, the defendant's use of the gun, and failed to include this error in the motion to reconsider.

¶ 36    However, as shown above, the trial court did not rely on the defendant's "use" or "discharge" of the gun at sentencing but instead focused on the circumstances of the offense, defendant's history and character, the seriousness of the offense, defendant's actions following the incident, and the location of the incident. As such, we do not find trial counsel's failure to

17

object or failure to include double enhancement in his motion for reconsideration to fall below an objective standard of reasonableness. Counsel is not required to present objections or motions when they would be futile. *Patterson*, 217 Ill. 2d at 438.

¶ 37                     Improper Sentencing Factor—The School Records

¶ 38    The defendant also claims that the trial court erroneously considered alleged misconduct at school, found in the defendant's school records attached to the PSI, in aggravation. He bases this claim on the trial court's statement that defendant was "anti-social," had "a total lack of respect for the community," and "impinged on all kinds of people rights based upon [his] history." Defendant claims "the only explanation for these assertions" was that the trial court improperly considered defendant's school records in aggravation because (1) the State did not present relevant or reliable evidence about any of the alleged conduct because it did not call any witnesses who could be cross-examined; (2) even if taken verbatim, the alleged disciplinary incidents did not support the conclusion that defendant was antisocial, particularly considering his youth; and (3) the conclusion that defendant was antisocial was rebutted by the letters of support.

¶ 39    In response, citing *People v. Hibbler*, 2019 IL App (4th) 160897, the State claims that defense counsel's acceptance of the PSI, which included defendant's school records, was an affirmative waiver of these arguments precluding review of this issue. In reply, defendant contends that trial counsel's statement at the hearing that "the evidence really doesn't establish [the misconduct] by any credible standards" was sufficient to preserve the issue and claims the State's reliance on *Hibbler* is misplaced.

¶ 40    We first consider whether this claim was affirmatively waived or properly preserved for review. In *Hibbler*, the defendant argued that "the trial court erred by considering his rule

18

violations while in jail 'without the benefit of witness testimony.' " *Id.* ¶ 49. The defendant conceded the issue was not raised before the trial court and requested plain-error review. The State claimed the argument was not only forfeited but was "waived by defendant's affirmative acquiescence—specifically, his failure to object to the PSI." *Id.*

¶ 41     *Hibbler* addressed the difference between forfeiture and waiver stating, " 'Waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right.' " *Id.* ¶ 51 (quoting *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011)). The court noted the difference between "mak[ing] a tactical decision not to object to otherwise objectionable matters, which thereby waives appeal of such matters," and a "fail[ure] to recognize the objectionable nature of the matter at issue, which results in procedural forfeiture." *Id.* The court further noted that plain-error review only applied to forfeiture and not to waiver. *Id.* (citing *People v. Sebby*, 2017 IL 119445, ¶ 48, and *People v. Dunlap*, 2013 IL App (4th) 110892). Finally, the court referenced its 30-year-old decision that required both the State and the defendant to report inaccuracies or disagreement with the PSI to the court or risk waiver of any objections to the trial court's consideration of the PSI contents. *Id.* ¶ 52 (citing *People v. Powell*, 199 Ill. App. 3d 291, 294-95 (1990)). To avoid waiver, the *Powell* court suggested that "trial courts, at the start of the sentencing hearing, ask all counsel if they received the PSI and if they found any inaccuracies." *Id.*

¶ 42     The PSI must be provided to the State and defense counsel "at least 3 days prior to the imposition of sentence." 730 ILCS 5/5-3-4(b)(2) (West 2014). Here, the record reveals that the PSI was filed with the court on November 19, 2014, nearly three months before the sentencing hearing held on February 18, 2015. When questioned, the State admitted receipt of the PSI and

19

presented a clarification that Carbondale Rebound school was "part of Carbondale Community High School District 165." It then stated it had no other changes or corrections.

¶ 43     The court then asked defense counsel if he had received a copy of the PSI, which counsel stated, "We have, Judge." When asked if the defense had any changes, additions, or corrections to the PSI, counsel stated, "Judge, we have a couple of minor discrepancies, but nothing that really amounts to anything. We'll accept it as filed." The court then asked if defense counsel wanted to put those on the record and counsel stated, "No, sir."

¶ 44     Despite the statements by defense counsel, which clearly revealed his knowledge of "a couple of minor discrepancies" and the affirmative denial of the court's opportunity to allow counsel to put them on the record, even after counsel stated it would accept the PSI "as filed," on appeal defendant claims that his counsel's later reference to the school "misconduct" stating "the evidence really doesn't establish that by any credible standards" was sufficient to preserve the issue. We disagree. The defendant's selective reliance on a portion of counsel's statement is unpersuasive as the statement came right after counsel stated, "What it says is what it says."

¶ 45     At no time did counsel present a formal objection as to the accuracy of the records or move to withdraw his prior acquiescence to submission of the PSI and school records that were accepted "as filed." "Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). Accordingly, we find that trial counsel affirmatively waived any objection to the trial court's reliance on the PSI or any of the attached school records and decline to review this issue under the plain-error doctrine.

¶ 46     Defendant also argues that his counsel was ineffective for failing (1) to object to the court's reliance on the unsworn assertions about the defendant's school disciplinary record, (2) to

20

object when the trial court relied on the history set forth in the PSI and records at sentencing, and (3) to include this error in the motion to reconsider. To prevail on a claim for ineffective assistance of counsel, the defendant must show that his counsel's performance was deficient, and that the deficient performance was prejudicial. *Strickland*, 466 U.S. at 687.

¶ 47   "To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *People v. Richardson*, 189 Ill. 2d 401, 411 (2000) (citing *People v. Evans*, 186 Ill. 2d 83, 93 (1999), and *People v. Hampton*, 149 Ill. 2d 71, 108-09 (1992)). On appeal, defendant contends that "counsel did not want the court to consider the contents of the school records. Yet he did not object to their inclusion in the PSI or provide detailed argument to show that the court should not rely on them." Defendant further contends that "trial counsel should have addressed his contentions regarding the disciplinary records at the outset of the hearing" to address hearsay, double hearsay, and "other misconduct in the school records" that "did not constitute relevant and reliable evidence." To summarize, defendant is claiming that trial counsel should have objected to the school records because they were hearsay and require the State to present witnesses who could provide live testimony on the entries contained within the school records.

¶ 48   "As a general rule, trial strategy encompasses decisions such as what matters to object to and when to object." *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991). " 'Matters of trial strategy are generally immune from claims of ineffective assistance of counsel.' " *People v. Manning*, 241 Ill. 2d 319, 327 (2011) (quoting *People v. Smith*, 195 Ill. 2d 179, 188 (2000)). Here, defendant provides no argument addressing the general rule or the presumption enveloping trial strategy.

¶ 49   We find it especially relevant that defendant's claim on appeal that "the record shows that counsel did not want the court to consider the contents of the school records," is directly

21

controverted by trial counsel's affirmative statement that the defense would "accept [the PSI] as filed" and his conscious decision to refrain from placing any of the "minor discrepancies" related to the PSI on the record for the trial court's consideration. Perhaps counsel had concerns about what the witnesses might have stated regarding the incidents, that the witnesses might have embellished further on the incidents regarding the alleged gross disrespect or gross insubordination conduct at the hearing or that trial counsel was concerned that drawing further attention to these entries would undermine any attempt to mitigate any conclusions contained within the records. While defendant states why he believes his counsel's performance was deficient, he provides no argument to rebut the presumption that the challenged action was the product of sound trial strategy. As such, we find defendant's argument fails to rebut the presumption that trial counsel chose not to object and require live witness testimony as part of its trial strategy and that trial counsel's performance was not deficient.

¶ 50                                    Mitigating Evidence

¶ 51    Finally, defendant contends this court should reduce his sentence or grant a new sentencing hearing because the sentence failed to account for multiple mitigating factors, including strong provocation, his age, acceptance of responsibility, expression of remorse, effect on his infant daughter, character evidence, family support, and rehabilitative potential. "[T]he imposition of sentence is a matter of judicial discretion and the standard of review to determine whether a sentence is excessive is whether the trial court abused that discretion." *People v. O'Neal*, 125 Ill. 2d 291, 297-98 (1988). This is because the "trial court is in the best position to consider, *inter alia*, credibility, demeanor, general moral character, mentality, social environment, habits and age." *Id.* at 298. "[A] reviewing court will not substitute its judgment for

22

that of the trial court merely because it would have balanced the appropriate sentencing factors differently." *Id.*

¶ 52                                                     Provocation

¶ 53    Defendant, citing *People v. Calhoun*, 404 Ill. App. 3d 362, 386 (2010), contends the trial court erred in rejecting the evidence of strong provocation merely because he used a gun. However, in *Calhoun*, the facts regarding the provocation were undisputed. *Id.* at 364. In *Calhoun*, the defendant claimed that the mitigating factor of strong provocation was inadequately considered because "when she committed the crime she believed that the adult victim had molested her one-year-old daughter." *Id.* "Serious provocation is defined as conduct sufficient to excite an intense passion in a reasonable person." (Internal quotation marks omitted.) *Id.* at 386. The appellate court determined the trial court viewed the matter as vigilante justice warranting higher punishment instead of focusing on the "undeniably egregious nature of the provocation." *Id.* at 387.

¶ 54    Here, there was no dispute that when defendant pulled out his gun, Jerome started running to his car and fell. Nor is there any dispute that defendant chased Jerome to where he fell, and then he stood over Jerome and shot him; however, conflicting evidence regarding the details prior to the incident, which involved the provocation, was presented to the trial court. The testimony from the defendant's friend, Deon Jones, was contradicted by the witness statements in the PSI as well as Jerome's deposition testimony. While Jones initially claimed the initial fight was one on one, he later admitted it was two on one. Additional discrepancies included the extent of the beating Jerome gave defendant, who walked away from the fight first, and whether Jerome's son hit defendant on his way to the car. As there was conflicting evidence related to the

23

events surrounding the provocation, it was within the trial court's discretion to accept the facts it believed and discredit the contrary facts.[1]

¶ 55    Further, it was within the trial court's discretion to consider whether defendant's actions were reasonable and proportional in conjunction with the provoking event. Insufficient provocation does not require mitigation. Here, the evidence revealed that a fistfight occurred between defendant and the victim because defendant was fighting with the victim's son. The evidence also revealed that following the fight between Jerome and defendant, one of the parties walked away. Thereafter, defendant pulled out a gun, chased Jerome to the place where he fell, stood over Jerome, and shot him.

¶ 56    "The provocation must be proportionate to the manner in which defendant retaliated." *People v. Pugh*, 187 Ill. App. 3d 860, 868 (1989). While there is no dispute that Jerome was older, taller, and weighed more than defendant, even if the fistfight could be considered mutual combat, "retreat by the victim negates any inference of mutual combat." *Id.* at 869. Just as in *People v. Pugh*, which involved shooting the unarmed victim while he attempted to flee after a fistfight (*id.*), here, there was no evidence of aggression by Jerome (regardless of which party walked away first) after the parties separated, no evidence that Jerome was armed, and no reason for defendant to fear any further action by Jerome as he lay on the ground, where he fell near his car, prior to the shooting. For these reasons, we find the trial court did not abuse its discretion by failing to mitigate defendant's sentence for "strong provocation."

---

[1]Defendant also argues that "Jerome's criminal history—including serious violence—also undercuts the credibility of his version of events as noted in the factual basis," citing to Jerome's deposition at which time Jerome admitted his prior felony convictions. Defendant also cites to a 2018 brief filed with the Seventh Circuit in which Jerome was charged with further criminal activity in October 2015 in support of this contention. However, the defendant's sentencing hearing was held on February 18, 2015, and the initial reconsideration hearing was held on May 11, 2015, both of which occurred prior to Jerome's later charge. Further, the charge was not presented to the trial court at the second reconsideration held on March 2019. As such, it would have been impossible for the court to have this information to consider at the time of sentencing or during either reconsideration. Therefore, defendant's argument on appeal is not well taken and is not considered.

¶ 57                    Defendant's Age and Rehabilitative Potential

¶ 58    Defendant also claims the trial court erred by failing to give true consideration to his age, stating "[t]he record here does not show consideration of Omari's age and its impact on his high rehabilitative potential," claiming the trial court never mentioned defendant's age and only once remarked that defendant was "very young." Such argument has little merit with this record.

¶ 59    It is "presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary." *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 95. Here, the trial court called defendant "young man" three times, stated that defendant was a "very young man" once, and was aware that the incident occurred on the school grounds where both defendant and the victim's son attended school. Regarding defendant's rehabilitative potential, the trial court noted defendant attended special schools and received special services which failed to convince defendant to conform with "society's mores." The trial court's conclusion that rehabilitation was unlikely was further supported by defendant's juvenile record that revealed the defendant committed aggravated battery while on parole from his initial juvenile incident. Based on this record, defendant failed to meet his burden.

¶ 60    Defendant further claims error based on the holdings of *Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005), as they relate to the mitigating factor of youth. However, our supreme court noted that both it "and the United States Supreme Court have closely limited the application of the rationale expressed in *Roper*, *Graham*, and *Miller*, invoking it only in the context of the most severe of all criminal penalties." *People v. Patterson*, 2014 IL 115102, ¶ 110. In *Patterson*, our supreme court found that incarceration for "36 years for a juvenile who personally committed three counts of

aggravated criminal sexual assault" did not fall into that category. *Id*. Similarly, we do not find that *Roper*, *Graham*, and *Miller* apply to a prison term of 25 years (at 85%) for aggravated battery with a firearm. Therefore, we find no abuse of discretion related to the trial court's consideration of defendant's age and rehabilitative potential.

¶ 61                                    Remaining Factors

¶ 62    Finally, defendant contends that the trial court ignored numerous other mitigating factors, including defendant's guilty plea, acceptance of responsibility, expressed remorse, the numerous letters submitted on his behalf by both his family and the community, as well as the fact that his infant child would be without a father during his incarceration. However, the guilty plea and recent birth of defendant's child were addressed in the PSI. Additionally, defendant specifically mentioned his infant child, his remorse for the incident and accepted some responsibility, except for claiming that "none of this would have happened if he at the school had not beat me up," during his statement of allocution.

¶ 63    Further, the trial court specifically addressed the eight letters submitted on behalf of defendant. Contrary to defendant's contention, the trial court's discourse regarding the letters went well beyond defendant's claim that the "trial court's only mention of the letters was to note that they did not mention the gun." The trial court noted the contradictions between the good citizen referenced in the letters and defendant's actions on both the day of the incident, as well as after, which included hiding from police instead of going to them and telling them what happened and hiding the gun instead of turning the weapon over to the police. He further noted the outstanding character of some of the authors and that the letters advised the court of defendant "mowing people's lawns" and "helping with their difficulties."

26

¶ 64　　Therefore, we need not "presume" the trial court considered the letters. Here, the record indicates that the trial court considered the mitigating evidence, but gave it less weight than other factors, including the fact that the shooting occurred on school grounds, which the trial court was entitled to do. We may not substitute our judgment for that of the trial court merely because we may have weighed the factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Accordingly, we find that the trial court did not abuse its discretion in sentencing defendant and affirm the trial court's sentence.

¶ 65　　　　　　　　　　　　III. CONCLUSION

¶ 66　　For the foregoing reasons, we affirm defendant's sentence.

¶ 67　　Affirmed.